**Rita MONTERO, et al., Plaintiffs,**

**v.**

**Natalie MEYER, et al., Defendants.**

**No. 88–C–889.**

United States District Court,
D. Colorado.

April 27, 1992.

Barry Roseman, Henry Feldman, Denver, Colo., for plaintiffs.

Catharyn Baird, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This suit arises out of an initiated amendment to the Colorado Constitution designating English as Colorado's official language. Plaintiffs Rita Montero, Delfina Maria Garcia, Franciso Coca and Apolinar Rael, all Spanish-speaking Colorado citizens, seek declaratory and injunctive relief under the Voting Rights Act, 42 U.S.C. §§ 1971 *et seq.* (first claim) and 42 U.S.C. § 1983 for an alleged denial of their Fourteenth Amendment due process rights (second claim).

On September 16, 1988, this court granted the plaintiffs' motion for a preliminary injunction based solely on their first claim.[1] *See Montero v. Meyer,* 696 F.Supp. 540 (D.Colo.1988). The Tenth Circuit reversed that decision. *See Montero v. Meyer,* 861 F.2d 603 (10th Cir.1988), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989). Because the Tenth Circuit's decision disposed of all claims against the non-government defendants,[2] I dismissed the action as against them on November 20, 1990.

Currently pending are the parties' cross-motions for summary judgment on the plaintiffs' second claim as against the government defendants, Colorado Secretary of State Natalie Meyer and the State of Colorado. The parties have briefed the issues and oral argument has been heard. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1343.

## I. Background.

At the threshold it is necessary to review Colorado law governing ballot initiatives in the context of the facts underlying this action.

### A. Colorado Constitution and Initiative Statutes.

Colorado citizens are guaranteed the right to propose and enact amendments to the Colorado Constitution. Colo. Const. art V, § 1(1). Proponents of a proposed constitutional amendment first must submit a draft of the amendment's text to the General Assembly's legislative research and drafting offices for review and comment. *Id.* at § 1(5); Colo.Rev.Stat. § 1–40–101(1). Within two weeks after that submission, those agencies must:

"render their comments to the proponents of the proposed measure at a meeting open to the public, *which shall be held only after full and timely notice to the public.*" Colo. Const. art V, § 1(5) (emphasis added).

The proposed amendment then is submitted to Colorado's Secretary of State who must schedule a public hearing before herself, the Colorado Attorney General and the Director of the Colorado Legislative Drafting Office. Colo.Rev.Stat. § 1–40–101(2). At that hearing those three officials act as the "title board." Consistent with the requirements of Colo.Rev.Stat. § 1–40–101(2), the title board finalizes the language of the proposed amendment's title, submission clause and summary of content. *Id.*

---

1. Subsequent to that decision, the Colorado Supreme Court affirmed the state district court's dismissal of the plaintiffs' concurrently litigated state court action. *Montero v. Meyer,* 795 P.2d 242 (Colo.1990). The state decision related to claims that are not the subject of this federal action. *See id.*

2. The non-government defendants were the Official English Committee, Barbara M. Phillips, Mary Ann Carlos, Thaddeus R. Gembczynski, Chong Cha Woodfill and Violette M. Cordova.

Within forty-eight hours after the title board's decision, proponents of the amendment who claim that the language of the ballot title, submission clause or summary as drafted by the title board is unfair, or does not clearly express the proposal's true meaning and intent, may move for a title board rehearing. Colo.Rev.Stat. § 1–40–101(3). Upon an adverse rehearing decision, the proponents may seek expedited review from the Colorado Supreme Court. *Id.*

Any other registered elector[3] who is dissatisfied with the title board's decision on the grounds stated in § 1–40–101(3) may move for a rehearing within thirty days after the title board's hearing.[4] Colo.Rev. Stat. § 1–40–102(3). Expedited review by the Colorado Supreme Court is available on the same terms that govern a proponent's appeal. *Id.*

After collecting signatures that comply with Colo.Rev.Stat. § 1–40–107, an initiated constitutional amendment's proponents submit completed petition forms to the Secretary of State who determines whether they contain the statutorily mandated number of valid signatures. Colo.Rev.Stat. § 1–40–109. Any registered elector may file a written protest of the Secretary of State's certification that the signature requirement has been met. *Id.*

If a protest is filed the Secretary of State must hold a hearing, but may only consider whether the proponents have in fact met the minimum signature requirement. Judicial review of the Secretary of State's decision is limited to determining whether the Secretary of State acted arbitrarily, capri-

ciously or in excess of constitutional or statutory authority. *Id.*

**B.  Facts.**

In April 1987, proponents of the English Only initiative submitted an initial draft of their proposed amendment for review and comment. On April 27, 1987, the proponents met with legislative research and drafting office staff members to discuss the latter's comments.[5] *No public notice* of that meeting, as required under Colo. Const. art V, § 1(5), was provided. The proponents thereafter modified their proposal, submitting it formally to Colorado Secretary of State Meyer on April 29, 1987.

On April 30, 1987, Colorado Secretary of State Meyer issued notice that a title board hearing would be held on May 6, 1987, to set the English Only amendment's title, summary and submission clause. That notice was printed in the English language only and was mailed directly to the initiative's proponents.

Meyer sought to notify the general public of the impending title board meeting only by posting a copy of the notice outside the office that the Secretary of State formerly had occupied in the Colorado State Capitol, by placing an undetermined number of copies on the elections counter in the Secretary of States's then current office, by placing copies of the notice on a hallway table located outside the Capitol press office, by handing notices to reporters present in that office, and by leaving copies under the doors of other reporters' offices in the Capitol building.[6]

---

**3.**  Meyer asserts that neither Montero nor Garcia were registered electors on May 6, 1987, the day the title board hearing was held. (Defendants' supplemental brief, p. 5, n. 1). If those allegations are true, only the plaintiffs Coca and Rael have standing to assert the instant claim.

**4.**  Section 1–40–102(3) was amended in 1989 to provide a fifteen day appeal limitation period. *See* Colo.Rev.Stat. § 1–40–102(3)(a).

**5.**  Roughly forty questions were presented to the proponents. (Plaintiffs' brief, Ex. A). Questioned was, *inter alia,* the true meaning of the term "official," whether the amendment would

create a state obligation to assist individuals who do not speak or read English, what affect the amendment might have on bilingual education, whether public entities would be prohibited from providing materials in both English and Spanish and what affect the initiative might have on Latin phrases used by the government, such as *nil sine numine,* the Colorado state motto. *Id.*

**6.**  Defendants assert in their brief that the date of the hearing was reported in major Colorado newspapers, but there is no evidence before me for summary judgment on which I can so find. (Defendants' brief, p. 2, 10).

On May 6, 1987, the title board held its hearing. Meyer there orally notified those present of the time limits for seeking a rehearing and judicial review. That information was provided to the amendment's lead proponent by a letter dated May 7, 1987. No other notice was provided.

"English Only" petitions were thereafter circulated. On November 13, 1987, Meyer verified that the minimum number of valid signatures had been collected, and issued notice that a protest could be filed on or before November 27, 1987. Montero filed a protest on that date. Among other things, she argued: (1) that her due process rights had been violated by the state's failure to provide notice of her rights to rehearing and Colorado Supreme Court review; and (2) that the title board had not fulfilled its duties under Colo.Rev. Stat. § 1–40–101 because the initiative's language and the fiscal impact statement were too vague.

On December 15, 1987, Meyer held a hearing on Montero's protest. However she refused to consider Montero's arguments, concluding that they should have been raised at the May 6, 1987, title board hearing, on rehearing or on appeal to the Colorado Supreme Court. Because Meyer deemed herself without jurisdiction to consider any issue other than the validity of the petition's signatures, she dismissed Montero's protest.

Montero then commenced an action in Denver district court. That court affirmed Meyer's decision that she had no jurisdiction to entertain Montero's arguments, holding that they could be appropriately presented only within the statutory appeals process. On June 10, 1988, the plaintiffs commenced this action.

## II. Analysis.

Preliminarily I note that the plaintiffs have moved to amend their complaint. Justice requires granting the plaintiffs' motion to amend. Fed.R.Civ.P. 15(a).

Plaintiffs' § 1983 claim is based on an alleged deprivation of procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.[7] Plaintiffs argue that their state-created "liberty" right to obtain rehearing and Colorado Supreme Court review was denied when Meyer failed to notify them of the May 6, 1987, title board hearing.

Conceding that the Colorado statute creates a narrowly limited liberty interest for a registered elector to challenge title board decisions, the defendants assert: (1) that because the amendment here at issue has been approved by Colorado voters, this matter is moot; and (2) that if it is not moot, the plaintiffs received all the process that was due.

After reviewing the briefs and evidence submitted, I agree with the parties that no genuine issues of material fact remains in dispute. The matter is thus ripe for decision on summary judgment.

## A. Mootness.

Because the amendment was approved by Colorado voters in 1987, the defendants argue that the case is moot. A case is not moot if its underlying dispute falls within the class of controversies "capable of repetition, yet evading review." *First National Bank v. Bellotti,* 435 U.S. 765, 775, 98 S.Ct. 1407, 1415, 55 L.Ed.2d 707 (1978); *Rosario v. Rockefeller,* 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 1249 n. 5, 36 L.Ed.2d 1 (1973); *Grant v. Meyer,* 828 F.2d 1446, 1449 (10th Cir.1987), *aff'd,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). A finding of mootness is precluded if: (1) the challenged action's duration is too short for the litigation to be completed before the action expires; and (2) there is a reasonable expectation that the complaining party will be subjected to the same action in the future. *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); *Grant,* 828 F.2d at 1449.

Under no reasonably foreseeable circumstances could the plaintiffs have obtained full review of the issues here presented before the vote on this constitu-

---

7. In their amended complaint and briefs, the plaintiffs also asserted a deprivation of substantive due process. Plaintiffs abandoned that argument at the hearing.

tional amendment was held. Colorado law requires proponents of an initiative to obtain the required number of petition signatures within six months after the title board finalizes the title, submission clause and summary, and at least three months before the next election. Colo.Rev.Stat. § 1–40–104. As is evidenced by the instant motion, that time period proved too short for the plaintiffs to obtain complete judicial review, and any future suit on a similar initiative likely would extend beyond that statutory period.

Further it reasonably may be expected that the plaintiffs—and the public in general—will receive the same allegedly deficient notice of future title board meetings that was here provided.[8] I therefore conclude that the matter is not moot, and turn to the merits of the plaintiffs' claim.

### B. Plaintiffs' Due Process Claim.

■ Plaintiffs assert that in enacting Colo. Const. art V, § 1 and Colo.Rev.Stat. §§ 1–40–101 et seq., the state has created a constitutionally protected liberty interest that guarantees registered electors the right to challenge proposed amendments and to be notified of their opportunity to assert challenges. Defendants have conceded that the state has indeed created a "narrowly limited liberty interest" in registered electors' favor. (Defendants' supplemental response, p. 2). For the following reasons, I agree.

The term "liberty" is "broad and majestic," one among many great constitutional concepts "purposely left to gather meaning from experience." Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (quoting National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 646, 69 S.Ct. 1173, 1209, 93 L.Ed. 1556 (1949)). While the United States Supreme Court has not attempted to define with exactness the liberty guaranteed by the Fourteenth Amendment:

"the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children ... and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Meyer v. Nebraska, 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67 L.Ed. 1042] (1923); see also Moore v. East Cleveland, 431 U.S. 494, 545 [97 S.Ct. 1932, 52 L.Ed.2d 531] (1977) (White, J., dissenting and quoting Meyer); Board of Regents v. Roth, 408 U.S. 564, 572 [92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548] (1972) (quoting Meyer).

In a "Constitution for a free people, there can be no doubt that the meaning of "liberty" must be broad indeed." Roth, 408 U.S. at 572, 92 S.Ct. at 2707 (citing Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and Bolling v. Sharpe, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–95, 98 L.Ed. 884 (1954)).

■ A state, through its statutes and Constitution, can create substantive liberty interests independent of those provided by the Federal Constitution. As the United States Supreme Court has stated:

"Within our federal system the substantive rights provided by the Federal Constitution define only a minimum. State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution.... If so, the broader state protections would define the actual substantive rights possessed by a person living within that state.

Where a State creates liberty interests broader than those protected by the Federal Constitution, the procedures mandated to protect the federal substantive interests also might fail to determine the actual procedural rights and duties of persons within the State. Because state-created liberty interests are entitled to the protection of the federal Due Process

---

8. At hearing the defendants' attorney stated that notice more widely dispersed than that given in 1987 has not been provided for initiatives instituted after that time.

Clause ... the full scope of [a person's] due process rights may depend in part on the substantive liberty interests created by state as well as federal law." *Mills v. Rogers,* 457 U.S. 291, 300 [102 S.Ct. 2442, 2448–49, 73 L.Ed.2d 16] (1982) (citations omitted).

■ Thus it is clear that liberty rights, like constitutionally recognized property rights, are protected by the procedural guarantees of the United States Constitution even when the particular liberty interest at issue is created by state law, as was the right to notice here in question. *Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Accordingly, a state-created right that is sufficiently embraced within Fourteenth Amendment "liberty" entitles the right holder to federal constitutional procedural guarantees that "insure that the right is not arbitrarily abrogated." *Id.* (both cites).

■ When there is a claimed denial of a state-created liberty right, the question whether due process applies requires inquiry into the nature of the claimed interest at stake. *Roth,* 408 U.S. at 570–71, 92 S.Ct. at 2705–06; *see also Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). A person asserting the existence of an alleged liberty right:

> "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 [99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668] (1979) (quoting *Roth,* 408 U.S. at 577 [92 S.Ct. at 2709]).

■ The distinction between "expectation" and "entitlement" depends necessarily upon the degree to which the relevant law acts to limit the discretion of a decisionmaker. *See, e.g., Greenholtz,* 442 U.S. at 11–16, 99 S.Ct. at 2105–08; *Meachum v. Fano,* 427 U.S. 215, 227–229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); *see also*

*Board of Pardons v. Allen,* 482 U.S. 369, 382, 107 S.Ct. 2415, 2422–23, 96 L.Ed.2d 303 (1987) (O'Conner, J., dissenting); *Velasco–Gutierrez v. Crossland,* 732 F.2d 792, 796 (10th Cir.1984). Whether the unique structure of a particular state's law provides a protectable entitlement must be decided on a case by case basis. *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106.

As noted, the right of initiative in Colorado is not a matter of legislative grace but rather is reserved to the people in the state's Constitution. Colo. Const. art. II, §§ 1, 2 & art. V, § 1. The title board's first involvement in the initiative process is to schedule a public hearing to set the proposed measure's title and submission clause and to prepare a summary of the measure's content. Colo. Const. art V, § 1(5); Colo.Rev.Stat. § 1–40–101.

Section 1–40–101, Colo.Rev.Stat., specifically limits the title board's discretion in preparing the proposed amendment for the ballot. In mandatory language the statute requires the title board to avoid public confusion that a misleading title might cause by clarifying what effect a "yes" or "no" vote would have on the measure. *Id.* It must assure that the words of the measure's title "correctly and fairly express the true intent and meaning" of the proposed amendment. *Id.* Ballot titles must be brief, in the form of a question capable of being answered "yes" or "no," and must unambiguously state the "principle" of the provision sought to be added to the constitution. *Id.*

Similarly the proposed constitutional amendment's summary must be concise and must constitute a "true and impartial statement as to the intent of the proposed ... constitutional amendment." *Id.* It cannot be argumentative or likely to create prejudice for or against the measure and it "shall include an estimate of any ... fiscal impact, together with an explanation thereof." *Id.*

After the title board has held a hearing and completed its drafting tasks, any reg-

istered elector[9] who claims that a proposed constitutional amendment's title, summary or submission clause is "unfair or that they do not clearly express the true meaning and intent" of the amendment may seek a rehearing with the title board within thirty days after the title board hearing.[10] The title board has forty-eight hours thereafter to hold a hearing and render a decision. Colo.Rev.Stat. § 1–40–102(3). Electors are granted an absolute right, exercisable within five days after an adverse decision on rehearing, to petition the Colorado Supreme Court for expedited review. *Id.* The Supreme Court must place that matter at the "head of the calendar" and, after an opportunity for hearing, issue its decision as early as practicable. *Id.*

I agree with the parties that the above statutes grant all registered electors an interest in the choice of language to be used in a private initiative's title, submission clause and summary. It is further clear that, in their unique structure and language, the initiative statutes provide all registered electors a legitimate entitlement directly to challenge the title board's decisions through a title board rehearing and, if an adverse decision there results, by appeal to the Colorado Supreme Court. *See* Colo.Rev.Stat. §§ 1–40–101, 102.

The scope of the liberty right granted is not unlimited, however, and is defined by the nature of the interest the statute creates. Colorado law is clear that state administrative agencies' involvement in the initiative process is limited to performing ministerial functions that facilitate presentation of the proposed law to the electorate. *See Montero v. Meyer,* 861 F.2d 603, 609 (10th Cir.1988); *Brownlow v. Wunsch,* 103 Colo. 120, 83 P.2d 775 (1938) (decided under former law). Those agencies have no discretion to pass on the merit or validity of a proposed constitutional amendment and have no power to require amendment, modification or other alteration of a proposed

measure's text. Colorado Const. art. V, § 1(5); *Say v. Baker,* 137 Colo. 155, 322 P.2d 317 (1958); *Rocky Ford v. Brown,* 133 Colo. 262, 293 P.2d 974 (1956). Thus the title board's decision on rehearing is limited to determining whether the title, submission clause and summary as written create unfair prejudice either for or against a measure. Colo.Rev.Stat. §§ 1–40–101, 102.

The scope of the Colorado Supreme Court's review of a title board's rehearing decision is similarly narrow. In general the actions of the title board are presumptively valid, and the burden is on those attacking the title board's decisions to establish otherwise. *Say,* 322 P.2d at 319. The Colorado Supreme Court has confined its review within the following standards:

"(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed amendment since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the [title] board's action; and (3) only in a clear case should a title prepared by the board be held invalid." *In re Proposed Initiative Concerning Drinking Age,* 691 P.2d 1127, 1130 (Colo.1984); *Bauch v. Anderson,* 178 Colo. 308, 497 P.2d 698, 699 (1972).

Consistent with these standards, the Colorado Supreme Court has determined that mere ambiguity of a proposed amendment's summary, if it is not clearly misleading, is not a ground for disapproval. *In re Proposed Initiative Concerning State Personnel System,* 691 P.2d 1121 (Colo.1984). Nor is it the Court's function to replace a summary or title to achieve the best possible statement of the amendment, *In re Mineral Production Tax Initiative,* 644 P.2d 20 (Colo.1982), or to mandate changes that alleviate all possible problems that may in the future arise when applying the amendment. *In re Title Pertaining to*

---

**9.** The statute in effect at the time here relevant granted any "qualified" elector the right to challenge the title board's decisions. Colo.Rev.Stat. § 1–40–102(3) (1980). That term was amended to "registered" elector in 1989 and I use it here because it more accurately expresses the status

an elector must enjoy to have standing to assert a challenge. *See* Colo.Rev.Stat. § 1–40–101(3) (1991).

**10.** *But see supra,* n. 5.

*Sale of Table Wine in Grocery Stores,* 646 P.2d 916 (Colo.1982). Absent prejudice, the lack of a fiscal impact statement does not require Court action if fiscal impact cannot reasonably be determined. *In re an Initiated Constitutional Amendment,* 199 Colo. 409, 609 P.2d 631 (1980); *see also Spelts v. Klausing,* 649 P.2d 303 (Colo. 1982).

State law thus narrowly defines the liberty interest that registered electors enjoy.[11] Further, although the plaintiffs take serious issue with the language of the amendment as it ultimately was presented to the electorate,[12] it appears unlikely that full exercise of the plaintiffs' rights to have the matter reheard and judicially reviewed could have precluded a vote on the amendment.

It does not follow, however, that due process does not attach to protect the liberty right the state has created. The statutory grant of the liberty right to challenge the title board's decisions is mandatory and unequivocal. Each registered elector is granted the right and is legitimately entitled to exercise it.

Moreover, although not political speech within the ordinary meaning of that term, a challenge to a proposed constitutional amendment title, submission clause and summary engenders discussion on the issues the proposed amendment raises, thus

in a limited sense implicating registered electors' rights to debate political issues.[13] *See Meyer v. Grant,* 486 U.S. 414, 420, 108 S.Ct. 1886, 1891, 100 L.Ed.2d 425 (1988) (defining acts of Colorado initiative circulators as involving "core political speech"). Accordingly the due process rights enjoyed by the plaintiffs and other registered electors are entitled to at least some measure of constitutional protection. I therefore turn to examination of the statutory procedures to determine whether they provide at least the minimum process due in these circumstances.[14]

Due process is not a "technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). It is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Identification of the specific dictates of due process generally requires consideration of three factors:

(1) the private interest affected by official action;

(2) the risk of erroneous deprivation of that interest through the procedures used and the probable value, if any, of

---

11. The liberty interest also is narrowed by its nature as a broad right accruing to every registered elector rather than to a narrow class of persons within a particular group. The fact that government action affects a large number of people may tip the balance against finding that due process attaches. *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 801, 100 S.Ct. 2467, 2483–84, 65 L.Ed.2d 506 (1980) (Blackmun, J., concurring in the judgment). The case for due process protection grows stronger, however, as the identity of persons affected by a government choice becomes more clear, and becomes stronger still as the precise nature of the effect on each individual comes more determinately within the decisionmaker's purview. *Id.* at 800–01, 100 S.Ct. at 2483 (*citing* L. Tribe, American Constitutional Law § 10–7, p. 503–04 (1978)).

12. Plaintiffs argue that, had they been provided a chance, they would have challenged the lack of fiscal impact statement, the summary of the English Only amendment's intent and the title

board's failure to explain what effect the amendment would have on state government functioning.

13. The Colorado courts have treated the initiative as "a fundamental right at the very core of our republican form of government," and "viewed with the closest scrutiny any governmental action that has the effect of curtailing its exercise." *McKee v. Louisville,* 200 Colo. 525, 616 P.2d 969, 972 (1980).

14. Before embarking on that inquiry, I note that the existence of registered electors' substantive due process rights to challenge the title board's decisions seems obvious. Moreover, the statutes here at issue provide a timely and efficient process for asserting a challenge to the appropriate administrative and judicial entities. The inquiry at hand thus limits itself to whether the subject statutes prevent arbitrary abrogation of these substantive rights by mandating adequate notice.

additional or substitute procedural safeguards; and

(3) the government burdens, including fiscal and administrative burdens, that the additional or substitute procedural safeguards would entail. *Mathews,* 424 U.S. at 334–335, 96 S.Ct. at 902–903.

Having above considered the private interest affected, I need not discuss it further. The key inquiry is whether the statutes governing Colorado's initiative process create (or fail to guard against) the risk that registered electors' rights may be erroneously abrogated.

■ It can safely be stated that those statutes are hardly replete with requirements that interested parties be timely notified of essential proceedings. That timely notice of all relevant proceedings will be provided to all *proponents* of a proposed measure, however, is ensured by Colo.Rev. Stat. § 1–40–101 (requiring proponents to designate two individuals to whom notice may be sent). Further the Colorado Constitution and statutes mandate publication of the final text of a proposed constitutional amendment just prior to voting. *See* Colorado Const. art. XXIII, § 1; Colo.Rev. Stat. § 1–40–114. That publication, however, comes well after the time limit for a registered elector to assert a challenge to a measure's title, submission clause and summary. It therefore offers no procedural protection for the liberty interests here at issue.

■ However, there is *no* statutory requirement that registered electors generally be notified of impending title board hearings or of their right to appeal the board's

decisions. That omission seems glaring in light of the Colorado Constitution's requirement that legislative staffers, who review the original draft of a proposed amendment "render their comments to the *proponents* of the proposed measure at a *meeting open to the public, which shall be held only after full and timely notice to the public.*" Colo. Const. art. V, § 1(5) (emphasis added). That requirement implies that providing full and timely notice of initiative proceedings is, at a minimum, preferred.[15] Notably Colo.Rev.Stat. § 1–40–101 does not mimic the Colorado Constitution's language or specifically require notice but, rather, merely provides that the staffers' comments shall be rendered "at a meeting open to the public."

■ Defendants argue that, even if notice of initiative-related proceedings is statutorily required, the notice here given was satisfactory. I cannot agree. First, contrary to the Colorado Constitution's requirements, the public was not informed of the legislative agency comment hearing.[16] Nor can I conclude that notice of the title board meeting was sufficiently designed to reach interested registered electors.[17] Although notice was provided to the media, government reliance on the media's private decision whether to publish the notice is not constitutionally sufficient.

■ It seems obvious, however, that the addition of even minimal procedural safeguards could protect against the erroneous abrogation of registered electors' rights. Notice reasonably designed to timely apprise is the basic standard. Notice by publication in newspapers of general circulation reasonably prior to the title

---

**15.** Colorado courts have interpreted the terms "full and timely notice" as notice requiring "fair notice to the public." *Benson v. McCormick,* 195 Colo. 381, 578 P.2d 651, 653 (1978). As noted in *Benson,* the "public right to know is indispensable to conducting representative government in our republic." *Id.* 578 P.2d at 654 (Carrigan, J., dissenting). The need for timely notice increases incrementally when, as here, the right subject to potential deprivation is constitutionally based.

**16.** That fact is critical because had the plaintiffs been informed of it, they may have become well

enough involved in the process to have learned of their appeal rights.

**17.** See *supra,* p. 5. Moreover, the plaintiffs assert without contradiction that they did not *actually* learn of the title board hearing at which Meyer provided *oral* notice of appeal rights. The lack of sufficient notice precluded appeal because, when Montero finally did obtain a rehearing before the title board in November 1987, Meyer concluded that any substantive challenge to the wording of the proposed English Only amendment was time barred.

board's hearing, and notice of the title board's decision and rights of appeal published soon after the hearing constitute the minimum constitutionally required procedures.[18]

The government burden entailed by the above notice requirements would be negligible, both fiscally and administratively. During a hearing on this matter, the defendants submitted a document from the Colorado Press Association that demonstrates the slight burden the above requirements would have on the public fisc.[19] (*See* Defendants' Ex. A, May 14, 1991 hearing). The administrative burden would appear to be similarly minor.

Based on the above analysis, I find and conclude that the plaintiffs had a liberty right to challenge the title board's decision on the "English Only" amendment that has now been added to the Colorado Constitution by the vote of this state's citizens. I further conclude that Colo.Rev.Stat. §§ 1–40–101 and 102 insufficiently provide for the notice required by the United States Constitution to protect the liberty interests here at stake, and that that statutory deficiency has directly led to deprivation of the plaintiffs' constitutional rights.

These conclusions, however, do not equate with a finding that the Colorado statutes governing the private initiative process are themselves unconstitutional. The validity of those statutes, enacted in the legitimate exercise of state power and under the express authority of the Colorado Constitution, is beyond question.

Rather it is the failure of those statutes to provide a notice requirement that protects against the arbitrary abrogation of the registered electors' state-created liberty rights that runs afoul of the Federal Constitution. Similarly the Secretary of State's efforts to provide notice in the absence of a specific requirement to do so have proved, in this case at least, to have been inadequate. While due process, of course, does not mandate that a hearing or right to appeal a title board's decision be provided, having granted that right Colorado cannot take it away from some electors by failing to provide the notice that is constitutionally required. *Meachum v. Fano*, 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). It follows that, within the limits of practicability, the state must protect by adequate notice the liberty right of registered electors to be heard if it is to fulfill the promise of the Due Process Clause. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971).

■ The final issue to be addressed is what remedy is appropriate in these circumstances. Plaintiffs have urged me to hold the amendment to the Colorado Constitution "null and void and not enforceable" because of the deprivation of their liberty rights. (Amended Complaint, p. 4, ¶ C). Defendants insist that the amendment is valid, and that, assuming additional notice is required, such notice should be mandated prospectively only. (Defendants' supplemental brief, p. 11).

The United States Supreme Court has determined that, at least when addressing violations of the Voting Rights Act, a dis-

---

**18.** Pre-hearing notice would allow electors an opportunity to attend, become timely apprised of the substance of the title board's decision, receive oral notice at hearing of their right to rehearing and judicial review, and allow sufficient time to consider whether to assert a challenge.

Timely post-hearing notice is required to inform registered electors of their right to demand a title board rehearing and thereby cause a "vesting" of the right to seek Colorado Supreme Court review. *See* Colo.Rev.Stat. § 1–40–102. Any such notice necessarily must include the text of the title, submission clause and summary, an adequate description of the time limits for seeking rehearing, and notice that the right to appeal to the Colorado Supreme Court may be available.

I note that similar publication requirements apply to actions that may affect an interest in real property, *see* Colo.Rev.Stat. § 38–37–118 (notice of public trustee's foreclosure), and actions for marriage dissolution. *See* Colo.Rev. Stat. § 14–10–107(4)(a).

**19.** I note that the short, sample notice provided in that exhibit appears sufficient to meet the constitutional requirements of procedural due process for pre-hearing notice.

trict court order voiding an election result and requiring a new vote may not be inappropriate. *See Perkins v. Matthews,* 400 U.S. 379, 396–97, 91 S.Ct. 431, 440–41, 27 L.Ed.2d 476 (1971). The Supreme Court has declined to reach that extreme result, however, when judicial principles governing the grant of retroactive relief weigh against providing it. *See, e.g., Allen v. State Board of Elections,* 393 U.S. 544, 571–72, 89 S.Ct. 817, 834–35, 22 L.Ed.2d 1 (1969).

The doctrine of nonretroactivity has been applied outside the area of criminal law on several occasions, in both constitutional and nonconstitutional cases. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (and cases there cited); *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87–89, 102 S.Ct. 2858, 2880–81, 73 L.Ed.2d 598 (1982). Recognized in United States Supreme Court precedent are three factors bearing on the issue of retroactivity:

(1) the holding to be applied nonretroactively must have decided an issue of first impression whose resolution was not clearly foreshadowed by earlier cases;

(2) the court must consider whether, in its purpose and effect, retroactive application will further or retard the holding in question; and

(3) whether retroactive application could produce substantial inequitable results in individual cases. *See Marathon,* 458 U.S. at 88, 102 S.Ct. at 2880; *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355–56.

In the present case, all of these considerations militate against retroactive application. This case is the first in which a court has considered whether a liberty interest attaches in the context of Colorado's initiative process, and the resolution here reached was not obvious or clearly foreshadowed. It is also clear that retroactive application would not further the operation of my holding but potentially could visit substantial inequitable results on those who in the past have relied on Colorado's initiative statutes.

Moreover, I am not persuaded that the strength of the plaintiffs' liberty interests and the gravity of harm to them because of the denial of those interests justifies voiding an amendment to the Colorado Constitution that was overwhelmingly approved by the state's voters. As above noted, it is far from likely that even a full exercise of the plaintiffs' statutory rights would have prevented a vote on the measure. At most, their challenge could only have obtained minor wording changes that in all probability would not have altered the vote's outcome.[20]

I am not unmindful of the unfortunate consequence that providing only prospective relief leaves unredressed the violation of the plaintiffs' rights, although it can, and should, protect the plaintiffs and other registered electors from future violations.[21] I am well aware that the issue of English as Colorado's official language has evoked sharply divergent reactions, from praise as a patriotic expression of this country's values to disparagement as a form of overt racism. *Compare Montero v. Meyer:* Official English, Imitative Petitions and the Voting Rights Act, 66 Den.U.L.Rev. 619 (1989), *with* Another View of *Montero v.*

---

**20.** At hearing, I invited the plaintiffs to identify what changes in the measure they would have sought and further to identify how those changes even arguably could have changed the result at the polls. I found their response unsatisfactory. Subsequent to that hearing, the plaintiffs submitted a second supplemental brief more concretely outlining their objections. Having carefully reviewed that brief, I remain steadfast in my conclusion that the plaintiffs could not have achieved through the statutory appeal process the result they urge this court to order.

**21.** What effect the English Only amendment may have in the future remains unclear. For example, it is not obvious that the amendment could not be used to require the state's name to be changed to "color red," or the state's motto *nil sine numine* to "nothing without providence." To this time, however, the amendment has had no apparent effect on governmental operations.

*Meyer* and the English Only Movement: Giving Language Prejudice the Sanction of Law, 66 Den.U.L.Rev. 633 (1989). Spanish-speaking Colorado citizens, some of whose ancestors lived within the geographic area now constituting this state well before a federal judiciary was established, may reasonably perceive the amendment at issue as an affront, not only to them personally but also to their heritage and culture that so deeply enrich this state and nation. In the instant circumstances, however, the law constrains the scope of relief available.

Accordingly, IT IS ORDERED that:

(1) the plaintiffs' motion to amend the complaint is granted;

(2) the plaintiffs' motion for summary judgment is granted;

(3) the defendants' cross motion for summary judgment is denied;

(4) as to all initiatives and referenda hearings governed by Colo.Rev.Stat. §§ 1–40–101 *et seq.* occurring after the date of this order, the defendants are ordered to publish pre-hearing and post-hearing notices to electors at least sufficient to meet the fair notice requirements of due process of law under the Fourteenth Amendment to the United States Constitution.