Rita MONTERO, Delfina M. Garcia, Francisco Coca, Apolinar Rael, Plaintiffs–Appellees and Cross–Appellants,

v.

Natalie MEYER, State of Colorado, Defendants–Appellants and Cross–Appellees,

and

Official English Committee, Barbara M. Phillips, Mary Ann Carlos, Thaddeus F. Gembczynski, Chong Cha Woodfill, Violette M. Cordova, Defendants.

Nos. 92–1196, 92–1213.

United States Court of Appeals, Tenth Circuit.

Jan. 19, 1994.

Dianne E. Eret (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., and Maurice G. Knaizer, Deputy Atty. Gen., with her on the briefs), First Asst. Atty. Gen., General Legal Services Section, Denver, CO, for defendants-appellants and cross-appellees.

Barry D. Roseman and Susan J. Tyburski (Kenneth A. Padilla and Henry J. Feldman, with them on the briefs), Denver, CO, for plaintiffs-appellees and cross-appellants.

Before TACHA, SETH, and BRIGHT*, Circuit Judges.

TACHA, Circuit Judge.

This action arose out of an initiated amendment to the Colorado Constitution designating English as Colorado's official language. The initiative appeared on the Colorado ballot and was approved by voters in November 1988. The amendment became effective following a proclamation of the Governor on January 3, 1989, and now appears as Article II, § 30a of the Colorado Constitution. Defendants–Appellants, Colorado Secretary of State Natalie Meyer ("Meyer") and the State of Colorado, appeal the district court's partial grant of Plaintiffs–Appellees' motion for summary judgment. 790 F.Supp. 1531. Plaintiffs, Rita Montero, Delfina Maria Garcia, Francisco Coca and Apolinar Rael, all spanish-speaking Colorado citizens, appeal the district court's denial of retroactive relief. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse the district court's partial grant of summary judgment for plaintiffs and order the district court to enter summary judgment for defendants.

## I. BACKGROUND

Before addressing plaintiffs' claims, we briefly review the Colorado constitutional and statutory law governing ballot initiatives. The Colorado Constitution reserves to the people the power to propose and enact amendments to the constitution. Colo. Const. art. V, §§ 1(1) and 1(2). The proponents of an amendment must submit a draft of the proposed amendment's text to the State Legislative Council and the Legislative Drafting Office for review and comment. Colo. Const. art V, § 1(5); Colo.Rev.Stat. § 1–40–101(1) (1988). The comments are then given to the proponents of the initiative at a meeting open to the public "which shall be held only after full and timely notice to the public." Colo. Const. art. V, § 1(5); Colo.Rev.Stat. § 1–40–101(1). The proposed initiative is then submitted to the secretary of state who convenes the "Title Board," which is comprised of the secretary of state, the attorney general and the director of the legislative drafting office. Colo.Rev.Stat. § 1–40–101(2). At a public meeting, the Title Board finalizes the language to appear on the ballot—the initiative's title, submission clause and summary of content. Colo.Rev. Stat. § 1–40–101(2). The Title Board must "fix a proper fair title" and "prepare a clear, concise summary" of the initiative that is a "true and impartial statement as to the intent" of the proposed initiative. *Id.* Any proponents who believe the Title Board's language does not "fairly express the true meaning and intent" of the proposed initiative may, within forty-eight hours, move for rehearing and if overruled may seek review in the Colorado Supreme Court. Colo.Rev. Stat. § 1–40–101(3). Any other qualified elector[1] who believes the language of the proposed initiative is unfair or does not clearly express the true meaning and intent of the initiative may seek rehearing within thirty days and, if overruled, may seek review in the Colorado Supreme Court. Colo.Rev.Stat. § 1–40–102(3).

## II. FACTS

In April 1987, proponents of an initiative to make English the official language of Colorado submitted an initial draft of their proposed amendment to the State Legislative Council and the Legislative Drafting Office. After receiving comments, the proponents then submitted the proposed amendment to Colorado Secretary of State Meyer. On May 6, 1987, the Title Board held a hearing on the proposed amendment. No motions for rehearing of the Title Board decision were received by the board within the statutorily prescribed period. On November 13, 1987, Meyer verified that the proponents had met the statutory signature petition requirements and issued notice that a protest on the petitions could be filed on or before November 27, 1987. Montero filed a protest on that date.

On December 15, 1987, Meyer held a hearing on Montero's protest. Among other things, Montero argued that: (1) her due process rights had been violated by the state's failure to provide adequate notice of her right to rehearing and Colorado Supreme Court review; and (2) the Title Board had

---

* The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. "Qualified elector" is defined in Colo.Rev.Stat. § 1–40–106 (1988).

not fulfilled its duties under Colo.Rev.Stat. § 1–40–101 because the initiative's language was vague. Meyer refused to consider Montero's arguments, concluding that they should have been raised at the May 6, 1987, Title Board hearing, on rehearing or on appeal to the Colorado Supreme Court. Because Meyer deemed herself without jurisdiction to consider any issue other than the validity of the petition's signatures, she dismissed Montero's protest. Montero then filed suit in state court and the state court affirmed Meyer's decision.

Montero and the other plaintiffs then commenced an action in the United States District Court for the District of Colorado seeking declaratory and injunctive relief under the Voting Rights Act, 42 U.S.C. § 1977, and under 42 U.S.C. § 1983, alleging violations of their constitutional right to due process pursuant to the Fourteenth Amendment. In September 1988 the district court granted plaintiffs' motion for a preliminary injunction preventing Meyer from conducting an election on the proposed constitutional amendment. Meyer appealed and this court, in *Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989), reversed and vacated the preliminary injunction, and remanded the case to the district court. On remand, the district court dismissed the Voting Rights Act claim leaving before the court only the § 1983 claim. The parties then filed cross motions for summary judgment, and the court denied the defendants' motion and partially granted the plaintiffs' motion. Reasoning that the Colorado Constitution and Colo.Rev.Stat. §§ 1–40–101 and 1–40–102 created a liberty interest in plaintiffs which guaranteed them the right to challenge the proposed amendment and to be notified of their opportunity to assert challenges, the district court held that Secretary of State Meyer's failure to notify the plaintiffs of the May 6, 1987, Title Board hearing deprived the plaintiffs of due process guaranteed by the Fourteenth Amendment. The district court, however, granted plaintiffs prospective relief only, ordering the Title Board to com-ply with certain notice and publication requirements in the future but refusing to invalidate the successful amendment. The parties appeal the district court's determination of their cross motions for summary judgment.

## III. ANALYSIS

The only remaining claim in this case is based on 42 U.S.C. § 1983. Plaintiffs first allege that the defendants deprived them of their Fourteenth Amendment Due Process rights because they did not receive adequate notice of the Title Board hearing or of their right to obtain a rehearing and review by the Colorado Supreme Court.[2] Plaintiffs also allege they were denied their First Amendment right to petition the government for redress of grievances concerning the language of the proposed initiative. Although plaintiffs couch their arguments in terms of both Fourteenth Amendment and First Amendment rights, any rights, if they exist, are dependent on our finding that state law has created in plaintiffs an interest substantial enough to rise to the level of a "liberty interest" protected by the federal constitution. We must therefore determine whether the Colorado Constitution and the relevant Colorado statutes governing the ballot initiative created in the plaintiffs a liberty interest within the meaning of the Fourteenth Amendment. We hold that, under the circumstances presented here, the plaintiffs had no constitutionally protected liberty interest.

### A. Standard of Review

"We review the grant or denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)...." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citation omitted). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v.*

2. Plaintiffs also allege that the Title Board was acting in a quasi-judicial capacity in setting the language of the initiative and should be held to the notice standards of a judicial proceeding. Therefore, the plaintiffs argue they were entitled to notice that satisfied the due process require-ments of the Fourteenth Amendment. We find this argument is without merit. We previously held that the actions of the Title Board officials are ministerial, not quasi-judicial. *Montero*, 861 F.2d at 609.

*Scarborough,* 935 F.2d 1167, 1170 (10th Cir. 1991).

■ The analysis concerning the identification of a state created liberty interest "parallels·the accepted due process analysis as to property." *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Whether an interest created by state law rises to the level of a "liberty interest" protected by the Due Process Clause of the Fourteenth Amendment is a matter of federal law. *See Olim v. Wakinekona,* 461 U.S. 238, 244 n. 5, 103 S.Ct. 1741, 1744 n. 5, 75 L.Ed.2d 813 (1983). The scope of a claimed state created liberty interest, however, is determined by reference to state law. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). We review the district court's determination of state law de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

### B. Interest Created by Colorado Law

The Supreme Court has "repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). In *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), the Court stated:

> When governmental action affects more than a few individuals, concerns beyond economy, efficiency, and expedition tip the balance against finding that due process attaches. We may expect that as the sweep of governmental action broadens, so too does the power of the affected group to protect its interests outside rigid constitutionally imposed procedures.

*Id.* at 800, 100 S.Ct. at 2483 (Blackmun, J. concurring). Moreover, although "[a] liberty interest is of course a substantive interest of an individual, it cannot be the right to demand needless formality." *Shango v. Jurich,*

681 F.2d 1091, 1100–01 (7th Cir.1982). Thus, in *Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915), the Supreme Court noted:

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole ... There must be a limit to individual argument in such matters if government is to go on.

The Supreme Court has further narrowed the analysis of· when a liberty interest attaches. "To have a [liberty] interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have *a legitimate claim of entitlement* to it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). Some examples· are instructive. When a state creates in its citizens the right to operate a vehicle on the highway by issuing driving licences, it also creates in the driver a legitimate expectation to continue to operate the vehicle and the state may not withdraw this right from an individual without giving him due process. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Similarly, if a state gives a parolee the right to be at liberty as long as he complies with the requirements of his parole, the state has created in the individual a legitimate right to his freedom and the state may not withdraw the conditions of his parole without affording him procedural due process. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Supreme Court also has found that the involuntary transfer of a prisoner to a mental hospital implicates a protected liberty interest when the state statutes at issue give rise to a legitimate entitlement on the part of the prisoner to be kept in normal prison facilities and not to be transferred to a mental hospital without procedural due process. *Vitek,* 445 U.S. at 489–90, 100 S.Ct. at 1262. In these cases a legitimate right to an entitlement created by state law was terminated by state action. It is this termination of a right previously af-

forded by the state and in which there is a legitimate claim of entitlement which invokes the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment.

The Court has also held that certain procedural requirements, which provided no significant restrictions on decision-makers or no articulable standards to guide their discretion, do not establish Fourteenth Amendment property or liberty interests. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976) (no liberty interest in intrastate prison transfer because transfers were completely discretionary and prisoner did not have any right or justifiable expectation that he would not be transferred); *Wakinekona*, 461 U.S. at 248, 103 S.Ct. at 1747 (same); *see also Siu v. Johnson*, 748 F.2d 238, 243 n. 11 (4th Cir. 1984) (established procedures relating to tenure review created only unilateral expectation not entitlement because professor remained employee-at-will); *Shango* 681 F.2d at 1101 (state-created procedural right held not to constitute Fourteenth Amendment liberty interest because procedures did not create in the prisoner any legitimate entitlement to remain in one particular prison). The fact which distinguishes why certain state statutes have been found to create liberty interests entitled to due process protection while others have not is based on the language of the statutes themselves. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461, 109 S.Ct. 1904, 1908–09, 104 L.Ed.2d 506 (1989). "Simply stated, a state creates a protected liberty interest by placing substantive limitations on official discretion." *Id.* (quoting *Wakinekona*, 461 U.S. at 249, 103 S.Ct. at 1747). These substantive limitations work to create the "legitimate claim of entitlement" giving rise to a constitutional right. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Thus, we must examine the relevant Colorado constitutional and statutory provisions to determine whether the plaintiffs have any legitimate claim of entitlement to participate in Title Board hearing, to obtain a rehearing or to seek review in the Colorado Supreme Court.

### 1. Colorado Constitution

We look first to the state constitution to determine what, if any, liberty interest is created by the state of Colorado in the amendment process. Article V, section 1 of the Colorado Constitution provides in pertinent part: "the people reserve to themselves the power to propose laws and amendments to the constitution and to enact or reject the same at the polls...." Thus, the constitution created two rights: (1) the right in the *proponents* to propose laws and amendments, and (2) the right in all *voters* to vote on the proposition. Colo. Const. art. V, § 1. The Colorado Constitution does not anticipate any debate on an initiative proposal during the process of placing a matter on the ballot. Indeed, such a debate would dilute significantly the "right to propose" that inheres in the people of Colorado. The Colorado Constitution creates no legitimate entitlement in the plaintiffs to participate in the process of placing an amendment on the ballot.

### 2. Colo.Rev.Stat. §§ 1–40–101 and 1–40–102

The statutory scheme adopted by the Colorado legislature to effect ballot initiatives implements the rights granted by the state constitution. The statutory procedure for placing a measure on the ballot in Colorado protects the right of initiative proponents to have a full opportunity to make certain that the measure, as phrased on the ballot, accurately reflects the meaning intended by the proponents.

Section 1–40–101 provides that the *proponents* of an initiative submit a draft to the legislative council and drafting office. Then the directors of the legislative council and drafting offices review the proposed initiative and provide the *proponents* with their suggestions and comments. § 1–40–101(1). The *proponents* may take these suggestions and amend the draft if they wish. *Id.* The *proponents* then submit the draft to the secretary of state who schedules a hearing before the Title Board which proceeds to "fix a proper fair title", a submission clause, and "a clear, concise summary" of the proposed amendment. § 1–40–101(2). The summary

must be "a true and impartial statement as to the intent" of the proposed amendment. *Id.* The title of the proposed initiative must "correctly and fairly express the true intent and meaning" of the initiative. *Id.* Upon completion of the title, submission clause and summary, the Title Board returns the draft of the initiative to the *proponents.* *Id.* Then if the *proponents* feel the Title Board has not clearly and fairly stated the true meaning and intent of the initiative, within forty-eight hours, they may move for a Title Board rehearing and, if overruled, may seek review in the Colorado Supreme Court. § 1–40–101(3).

■ Section 1–40–101 calls for initiative proponents to seek advice and comment from the legislative council and legislative drafting office. This statutory process "permits *proponents* of initiatives to benefit from the experience of independent experts in the important process of drafting language that may become part of this state's constitutional or statutory jurisprudence." *In re Proposed Initiated Constitutional Amendment Concerning Ltd. Gaming in the Town of Idaho Springs,* 830 P.2d 963, 966 (Colo.1992) (emphasis added). The complex statutory process is designed to help both the experienced ballot initiative organizations and the inexperienced organizations draft clear and concise language for the initiative. *See* Kent L. Singer, *Ballot Initiatives in Colorado,* The Colorado Lawyer, 1849, 1850 (Sept. 1992). The statute requires proponents to allow the Title Board to fix the components of the initiative and provides explicit instructions to the Title Board on how the title, submission clause and summary are to be completed. § 1–40–101. This Court has held that the procedures enumerated in the Colorado ballot initiative scheme—the Title Board's drafting of a title, submission clause and summary—are designed primarily to make the initiative process fair and impartial. *Montero,* 861 F.2d at 609–10. Thus, the state developed § 1–40–101 to benefit the *proponents* of ballot initiatives. Together with Article V, § 1 of the Colorado Constitution, § 1–40–101 creates a right in the people of Colorado to bring initiatives before the Colorado electorate. Section 1–40–101 does not create in the plaintiffs any legitimate entitle-ment to participate in the framing of the language of the ballot initiative.

■ Unlike the broad rights created for proponents in § 1–40–101, § 1–40–102 provides to qualified electors a limited and narrowly-construed procedural opportunity for Title Board rehearing and supreme court review separate from the rights granted to proponents. Section 1–40–102(3) provides in pertinent part: "[a]ny qualified elector ... who is not satisfied with the titles, summary, and submission clause thus provided and claims them to be unfair or that they do not clearly express the true meaning and intent of the proposed law or constitutional amendment, within thirty days ... may file a motion with the secretary of state for a rehearing," and if overruled, may seek review in the Colorado Supreme Court. The Supreme Court of Colorado has intimated that this right in *qualified electors* is very narrow, never addresses the merits of an amendment, and presumes the validity of the Title Board decision. *See In re Proposed Initiative Concerning Drinking Age in Colorado,* 691 P.2d 1127, 1130 (Colo.1984).

Any rights created by the Colorado statutes in qualified electors are rights in a narrowly-circumscribed procedural review of the actions of the Title Board in carrying out its responsibility to make sure that the title, submission clause and summary are fairly worded and reflect the intent of the proponents. No special rights are created in any subgroups within the Colorado qualified electorate. The statutory procedures were fully carried out in this case. Plaintiffs argue, in effect, that they had a right to actual notice of the time limitations for filing a petition for rehearing on Title Board determinations or for Colorado Supreme Court review. Plaintiffs here have no rights beyond those granted to qualified electors to be heard within the procedural framework of the narrow right of review of Title Board actions allowed to all qualified electors. "The State may choose to require procedures for reasons other than protection against deprivation of substantive rights.... [B]ut in making that choice the State does not create an independent substantive right." *Wakinekona,* 461 U.S. at 250–51, 103 S.Ct. at 1748.

The Colorado statutes do not require actual notice or notice by newspaper publication of Title Board hearings. The fact that the state has chosen to provide notice to the qualified electors in a more limited way than we might have chosen in no way transforms a limited statutory procedural right into a federal constitutional entitlement. *Shango*, 681 F.2d at 1101. To the contrary, a liberty interest created by state law is by definition circumscribed by the law creating it. In this case the statutory procedures granted to qualified electors were completely carried out. No claim to the contrary is made in this case.

To suggest that the procedures for proposing initiatives in Colorado somehow carry with them an entitlement of constitutional dimension allowing all subgroups with an interest in the issue which may vary from the proponents' interest or viewpoint to receive particularized notice or an opportunity to be heard is to jeopardize and even diminish the *proponents'* entitlements that are created by the state constitution and statutes. Section 1–40–102 does not create in plaintiffs a legitimate claim of entitlement to participate in the Title Board hearing, to obtain a rehearing or to seek review in the Colorado Supreme Court. The plaintiffs' mere unilateral expectation of rights associated with the Title Board procedural process does not amount to a constitutional entitlement sufficient to trigger due process protections. Absent such an entitlement, the fact that the interests of the plaintiffs in the initiative process were foreclosed does not merit constitutional protection.

## IV. CONCLUSION

The entitlements and therefore the interests that are created by state law in Colorado are the rights in the people to propose initiatives and to enact or reject the measure as proposed. Plaintiffs' alleged expectation in this case would inject into the initiative process a debate on the merits (or at least the phrasing of a ballot measure) that would diminish, at the critical point of framing the issue to reflect the intent of the proponents, the constitutional grant of the clear right of the people of Colorado to propose laws and amendments and have them presented to the electorate. Plaintiffs missed their statutory procedural opportunity for review that they

share with all qualified electors. They have no further rights. State law creates in them no further legitimate claims of entitlement. Plaintiffs here have no liberty interest and they therefore have suffered no deprivation of any constitutional right. We REVERSE the district court's partial grant of summary judgment for plaintiffs and order the district court to enter summary judgment for defendants.