John HOYLE, individually and on behalf of Arkansas Taxpayers' Rights Ass'n, and as representative of the class of more than 100,000 Arkansans who petitioned for Proposed Constitutional Amendment 4 of 1998 and further as representative of the class of All Registered Voters of the State of Arkansas, Joe Hoyle, Earl Oxford and Tom Tinsley Plaintiffs

v.

Sharon PRIEST, in her official capacity as Secretary of State, and in her capacity as Chairman of the State Board of Election Commissioners, Mike Huckabee, in his official capacity as Governor of the State of Arkansas, Doris Tate, in her official capacity as Sebastian County Clerk, as representative of the class of all County Clerks and election officials of the State of Arkansas Defendants.

Civil No. 98–2163.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

July 30, 1999.

Thomas C. Gean, Sebastian County Prosecuting Attorney, Fort Smith, AR, for Doris Tate.

### MEMORANDUM AND ORDER

DAWSON, District Judge.

This matter is before the Court on the motion to dismiss the amended complaint filed by separate defendants, Sharon Priest and Mike Huckabee (document # 26), and the plaintiffs' motion for leave to amend the complaint a second time (document # 28). For the reasons set out within this opinion, the motion to dismiss will be granted and each of plaintiffs' claims against all defendants, including those against separate defendant Doris Tate, will be dismissed with prejudice. Plaintiffs' motion for leave to amend will be denied.

The amended complaint was filed on May 17, 1999,[1] under the provisions of 42 U.S.C. §§ 1981, 1983, 1985 and 1988 alleging: (1) deprivation of plaintiffs' right to peacefully petition the government for the redress of grievances, violation of federal Voting Rights Act, and the First, Fifth and Fourteenth Amendments of the Constitution; and (2) the violation of plaintiffs' rights under the Due Process Clause. Plaintiffs challenge the state-wide initiative petition mechanism that permits a proposed constitutional amendment to be placed upon the general-election ballot for direct, "grassroots" approval.

In their motion to dismiss, the defendants contend that the plaintiffs' claims are precluded by the doctrine of res judicata; that the amended complaint does not present a live case or controversy; and that the amended complaint does not state a claim upon which relief can be granted.

Oscar Stilley, Fort Smith, AR, for Joe Hoyle, Earl Oxford, Tom Tinsley.

Mark L. Pryor, Wright, Lindsey & Jennings LLP, Little Rock, AR, Tim C. Humphries, Attorney General's Office, Little Rock, AR, for Sharon Priest, Mike Huckabee.

---

1. The suit was originally filed on October 29, 1998. A motion for immediate preliminary injunction was filed concurrently with the complaint, and a hearing on the motion was held on October 30, 1998. The preliminary injunction was denied. Separate defendant Bobby Roberts filed a motion to dismiss on March 2, 1999. Plaintiffs did not oppose the motion to dismiss, but sought permission to file a first amended complaint. By order entered May 6, 1999, the court dismissed the complaint as to Bobby Roberts and granted plaintiffs leave to file the amended complaint.

Jurisdiction is proper under the general federal question statute, 28 U.S.C. § 1331.

## I. The State–Wide Initiative Procedure

Plaintiffs were the sponsors of a state-wide initiative petition to place proposed Amendment 4 on the ballot for the state-wide general election held November 3, 1998. The proposed amendment would have abolished all property taxes and implemented a completely different system of taxation based primarily upon sales and use taxes collected at the state, county and local levels. Although Amendment 4 was initially certified by the separate defendant, Sharon Priest, Secretary of State, for placement on the ballot, the Arkansas Supreme Court ordered the measure removed from the ballot after an opposition group led by Bobby Roberts successfully challenged the legal sufficiency of a number of the signatures contained within the initiative petition.

Amendment 7 of the Arkansas Constitution reserves to the people of the State the power to propose amendments to the constitution and to approve or reject the same at the polls. The procedure that must be followed in order to successfully place a proposed amendment upon the general election ballot is set out within Amendment 7 and codified in the Arkansas Code. *See* ARK.CODE ANN. §§ 7–9–101, et seq. (Repl.1993 & Supp.1997).

Prior to circulating an initiative petition, its sponsors must submit a draft of the petition with a proposed ballot title to the Arkansas Attorney General for review. The attorney general will either "approve and certify or shall substitute and certify a more suitable and correct ballot title ..." ARK.CODE ANN. § 7–9–107(a)–(b)(Repl. 1993). Once the ballot title has been certi-

fied, the proposed measure is published in the newspaper and sponsors may begin to circulate the initiative petition in order to collect the requisite number of signatures.

Both Amendment 7 and the Arkansas Code contain specific instructions as to the proper procedure for the circulation of the initiative petition and the procurement of signatures. AR. CONST., Amend. 7; ARK.CODE ANN. § 7–9–108 (Repl.1993). An initiative petition proposing a constitutional amendment must contain the signatures of *legal voters* in the amount equal to at least ten percent (10%) of the total number of votes cast for the office of governor of the last preceding general election. AR. CONST., Amend. 7 (emphasis added). A "legal voter" is defined as "a person who is registered at the time of signing the petition pursuant to Amendment 51 of the Arkansas Constitution." ARK.CODE ANN. § 7–9–101(8)(Supp.1997).[2] Section 7–9–103(a)(1)(Supp.1997) permits "any person who is a qualified elector of the State of Arkansas" to sign an initiative petition. The term "qualified elector" is defined as "a person who holds the qualifications of an elector and who is registered pursuant to Arkansas Constitution, Amendment 51." ARK.CODE ANN. § 7–1–101(10)(Supp.1997). According to these code sections, only a person whose registration has been received and acknowledged by the permanent registrar is entitled to sign a state-wide initiative petition.

Amendment 7 permits the enactment of laws "prohibiting and penalizing perjury, forgery and all other felonies or other fraudulent practices in the securing of signatures of filing of petitions." AR. CONST., Amend. 7. The Arkansas Code provides a criminal penalty for falsification of an initiative petition, including "knowingly and

---

**2.** All qualified electors may apply for registration to vote by filling out a voter registration card and filing the same with the registrar. The registrar must file the registration promptly. AR. CONST., AMEND. 51, § 9. Elector qualifications include a minimal residency requirement and an age requirement. AR. CONST., ART. 3, § 1. A person may possess the

qualifications of an elector, yet not be a "legal voter" because he or she failed to apply for registration or because the application has not yet been filed by the registrar. The constitution does provide that certain categories of persons who are not registered are entitled to vote by absentee ballot. AR. CONST., Amend. 51, § 9(h).

falsely sign[ing] a petition when [the person] is not legally entitled to sign it." ARK.CODE ANN. § 7–9–103(b)(3).

Once the requisite number of signatures have been collected, the petition is filed with the Secretary of State who reviews the signatures and determines their sufficiency. ARK.CODE ANN. § 7–9–111 (Supp. 1997). Initiative petitions must be filed with the Secretary of State not less than four months before the election in which they are to be considered by the voters. AR. CONST., Amend. 7. The Secretary of State will not accept for filing a petition that does not contain the required number of signatures. In addition, the Secretary of State will not accept the submission of additional signatures until a determination of the sufficiency of the signatures within the initial submission has been made. Amendment 7 provides that "[o]nly legal votes shall be counted upon petitions." If the Secretary of State determines that a petition does not contain the requisite number of valid signatures, a sponsor may within 30 days of notification obtain and submit additional signatures. AR. CONST., Amend. 7; ARK.CODE ANN. § 7–9–111(d).

Anyone who wishes to challenge the decision of the Secretary of State certifying the sufficiency of either the popular name and ballot title of the proposed amendment or the signatures contained within the initiative petition may seek injunctive relief directly from the Arkansas Supreme Court. AR. CONST., Amend. 7; ARK.CODE ANN. § 7–9–112 (Repl.1993). Although section 7–9–107(e)(Repl.1993) provides a means to obtain early judicial determination of the sufficiency of the popular name and ballot title of the proposed amendment,[3] subdivisions (e)(B)(1)(i) and (ii), requiring such a challenge within certain time limits, have been declared unconstitutional by the Arkansas Supreme Court. The Court found that the relevant portions of the statute violate Amendment 7 because they imply that the Supreme Court may review the sufficiency of the certified popular name and ballot title before the Secretary of State has determined whether there are sufficient signatures to have the initiated amendment placed upon the ballot. *Finn v. McCuen,* 303 Ark. 418, 798 S.W.2d 34 (1990). The Arkansas Supreme Court interprets Amendment 7 as granting it the power to review the decision of the Secretary of State only when the petition has been certified in all respects, which includes the signatures as well as the ballot title. *Id.* at 425, 798 S.W.2d at 38.

## II. Background

The amended complaint alleges that plaintiffs sponsored a state-wide initiative

---

**3.** The text of Arkansas Code section 7–9–107(e) reads as follows:

(1)(A) If a sponsor of any proposed state-wide initiative elects to submit its popular name and ballot title to the Attorney General for certification prior to September 30 of the year preceding the year in which the initiative would be voted on, then, within ten (10) days of certification by the Attorney General who shall deliver such certification to the Secretary of State on the day of certification, the Secretary of State shall approve and certify the sufficiency of such popular name and ballot title as certified by the Attorney General and shall cause to be published in a newspaper with statewide circulation the entire proposal with its certified popular name and ballot title and a notice informing the public of such certification and the procedure herein identified to govern any party who may contest such certification before the Supreme Court.

(B) The procedure shall be as follows:
(i) Any legal action against such certification shall be filed with the Supreme Court within forty-five (45) days of the Secretary of State's publication;
(ii) No such action filed later than forty-five (45) days following publication shall be heard by the Supreme Court;
(iii) An action timely filed shall be advanced by the Supreme Court as a matter of public interest over all other civil cases except contested election cases and shall be heard and decided expeditiously.
(2) Nothing herein shall be taken to require any sponsor of a state-wide initiative to submit its popular name and ballot title to the Attorney General prior to September 30 of the year preceding the year in which the proposal would be voted on...

petition asking that proposed Amendment 4 to the Arkansas Constitution (Amendment 4)[4] be submitted to the voters during the November 3, 1998 general election.[5] Prior to circulating the initiative petition, a draft of the proposed amendment together with its proposed ballot title and popular name was submitted to the Arkansas Attorney General. The Attorney General rejected the ballot title proposed by the sponsors of the initiative petition, and substituted and certified a revised ballot title. Plaintiffs circulated the initiative petition with the revised ballot title, and allege that they collected over 100,000 signatures in support of placing proposed Amendment 4 on the general election ballot. The petition was filed with the Secretary of State on July 2, 1998. The Secretary of State found that the petition contained a sufficient number of signatures of registered voters, and certified proposed Amendment 4 for placement on the ballots for the November 3, 1998 general election.[6]

On August 26, 1998, an original-action petition was filed in the Arkansas Supreme Court[7] seeking to have the proposed Amendment 4 removed from the general election ballot, alleging that the initiative petition did not contain sufficient valid signatures, and that the ballot title of the initiative petition was materially incomplete and defective. On September 8, 1998, plaintiffs intervened in the original-action and filed an answer, counterclaim and cross-claim asking that they be granted a 30-day period to correct any deficiency in the signatures appearing on the petition and for reformation of any defects in the ballot title. Plaintiffs/intervenors also raised several constitutional objections, contending that an adverse decision would violate their fundamental rights to petition the government for redress of grievances.

On September 11, 1998, the Arkansas Supreme Court found that the request for a "thirty-day cure period" was inapplicable to the original-action petition, and a master was appointed to conduct hearings and proceedings on the sufficiency of the signatures contained within the initiative petitions. The master was given until September 28, 1998 to file a report.[8] After hearing testimony and reviewing the evidence, the master concluded that 1,830 signatures counted by the Secretary of State should have been excluded, leaving a deficient number of signatures necessary for placement of the proposed Amendment 4 on the general election ballot. The master's report was timely filed, and the plaintiffs/intervenors filed objections to the report. On October 15, 1998, the Supreme Court of Arkansas delivered an opinion holding that the initiative petition lacked sufficient signatures to satisfy the requirements for placement of proposed Amendment 4 on the ballot. The original-action petition was granted, and proposed Amendment 4 was removed from the general election ballot.[9] Plaintiffs'/interve-

---

**4.** Proposed Amendment 4 was officially entitled, "An Amendment to abolish ad valorem property taxes, authorize the increase of sales and use tax, require voter approval of new taxes and tax rates, require periodic voter approval for certain local sales, use, and occupation taxes, limit state and local regulation, and for other purposes."

**5.** As the 1998 general election has come and gone, plaintiffs wish to allege in their second amended complaint that the same initiative petition has been re-filed and that they are actively seeking to place the proposed Constitutional Amendment on the ballot for the next general election. For purposes of this motion only, the Court will accept this allegation as

true. The Court finds that the plaintiffs' claims are not moot.

**6.** A total of 71,955 valid signatures were required for placement of the proposed amendment on the ballot. The Secretary of State determined that 72,810 signatures were valid.

**7.** *Bobby Roberts v. Sharon Priest, Secretary of State,* Ark. Sup.Ct. No. 98–1052.

**8.** The order originally set a deadline of September 22, 1998, but the deadline was extended to September 28, 1998 upon appropriate motion.

**9.** *Roberts v. Priest,* 334 Ark. 503, 975 S.W.2d 850 (1998). The Arkansas Supreme Court did

nors' motion for rehearing was denied. Plaintiffs then filed a complaint in this Court, and the matter is set for trial on August 30, 1999.

Unfortunately or not, it is not unusual for the sponsors of a proposed amendment to spend time and money attempting to work through the initiative process, including canvassing the state collecting signatures, and obtaining the certification of the Secretary of State, only to see the measure struck from the ballot at the last minute due to a successful challenge to the sufficiency of the ballot title and/or the signatures contained within the petition. That is what happened in the case at bar. The plaintiffs now ask this Court to find the state-wide initiative procedures violate their rights under United States Constitution.

### III. Discussion.

### A. Class Action Allegations

The style of both the complaint and the amended complaint allege that plaintiff John Hoyle is the "representative of the class of All Registered Voters of the State of Arkansas." In addition, separate defendant Doris Tate is alleged to be the "representative of the class of all County Clerks and election officials of the State of Arkansas." However, plaintiffs have failed to move for class determination and certifi-

cation within 90 days as required by Local Rule 23.1(b)(3). Such failure constitutes and signifies an intentional abandonment and waiver of all class action allegations. Therefore, the class action allegations are dismissed.

### B. Res Judicata

 Defendants contend that plaintiffs' claims must be dismissed because they are barred by the doctrine of res judicata. Specifically, defendants submit that res judicata precludes plaintiffs from re-litigating constitutional challenges to the initiative mechanism because those issues were or could have been litigated in the original-action suit before the Arkansas Supreme Court.[10] This court disagrees. Amendment 7 grants to the Arkansas Supreme Court original and exclusive jurisdiction to hear and determine issues relating to the sufficiency of a state-wide initiative petition after the petition has been certified by the Secretary of State. The Arkansas Supreme Court has strictly construed the grant of original jurisdiction to mean that it may review only those petitions that have been certified by the Secretary of State with respect to the popular name and ballot title and the number of valid signatures. *See Finn v. McCuen*, 303 Ark. 418, 422–3, 798 S.W.2d 34, 36 (1990). "[T]he only authority given this

not address the issue of whether the popular name and ballot title were insufficient or defective.

10. Given that the Arkansas Supreme Court has issued a ruling with regard to proposed Amendment 4, the Court wonders why defendants have not addressed the issue of the district court's subject matter jurisdiction in light of the *Rooker–Feldman* abstention doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 480–82, 103 S.Ct. 1303, 1314–15, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The *Rooker–Feldman* doctrine requires a federal district court to abstain from reviewing the final judgment of a state court. A federal district court has jurisdiction over constitutional challenges only if they are not inextri-

cably intertwined with the claims asserted in the state court. The *Rooker–Feldman* doctrine precludes a federal action if the decision of the district court would effectively reverse the state court decision or void its holding. *See Canal Capital Corp. v. Valley Pride Pack, Inc.*, 169 F.3d 508, 511 (8th Cir. 1999); *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 811 (8th Cir.1998). Because the jurisdiction of the Arkansas Supreme Court in original-action proceeding was limited to deciding the sufficiency of the signatures contained within the initiative petition, the constitutional issues were not inextricably intertwined with the state court's judgment and, in fact, were not even addressed. Therefore, by exercising subject matter jurisdiction over the constitutional issues, this court is not undertaking a review of the state court decision.

court by Amendment 7 is the authority to review the Secretary of State's certification of a 'petition' which includes both the ballot title and the signatures." *Id.* at 425, 798 S.W.2d at 38. Given that the jurisdiction the Arkansas Supreme Court exercises over an original-action petition brought pursuant to Amendment 7 is limited to reviewing the sufficiency of the petition, it would be inappropriate for the Arkansas Supreme Court to consider or to grant relief for federal constitutional claims. This is consistent with the fact that the Arkansas Supreme Court did not address the federal constitutional issues which the plaintiffs/intervenors attempted to raise in the state court. Res judicata does not bar the present suit, because plaintiffs' federal constitutional challenge to the initiative process could not have been litigated in the original action proceeding before the Arkansas Supreme Court.

## C. The Constitutional Challenges

Defendants contend that the amended complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a 12(b)(6) motion, the court must review the allegations contained in the complaint and construe them in a light most favorable to the plaintiff, and all factual allegations must be accepted as true. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief." *Springdale Educ. Ass'n. v. Springdale School Dist.,* 133 F.3d 649, 651 (8th Cir. 1998).

In the amended complaint, Plaintiffs allege that the initiative procedure authorized by state law violates their First Amendment right to peacefully petition the government for redress of grievances and their rights to due process of law under the Fifth and Fourteenth Amendments. Plaintiffs contend that the initiative process impinges upon core political speech therefore, the statutes are subject to strict First Amendment scrutiny. Finally, plaintiffs contend that the denial of the right to sign the initiative petition based upon merely technical errors violates the Voting Rights Act, 42 U.S.C. § 1971.

## 1. Relief under the Voting Rights Act.

■ Plaintiffs' claims do not implicate the Voting Rights Act because signing an initiative petition is not tantamount to voting in an election. The Act defines the word "vote" to include "all action necessary to make a vote effective including, but not limited to, registration or other action required by state law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election..." 42 U.S.C. § 1971(a)(3)(A), (e). Courts that have considered the issue have ruled that signing an initiative petition does not fall within the purview of the Voting Rights Act. *See Delgado v. Smith,* 861 F.2d 1489 (11th Cir.1988), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 589 (1989); *Montero v. Meyer,* 861 F.2d 603 (10th Cir. 1988), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989). Therefore, plaintiffs cannot state a claim under the Voter Rights Act upon which relief may be granted.

## 2. The Section 1981 Claim.

Next plaintiffs bring a claim pursuant to 42 U.S.C. § 1981 alleging that the initiative mechanism violates their right to peacefully petition the government for the redress of grievances under the First and Fourteenth Amendments of the United States Constitution, and their right to due process of law as guaranteed by the Fifth and Fourteenth Amendments. The claim for relief under 42 U.S.C. § 1981 is dis-

missed because that particular statute provides relief to victims of discrimination based on race and ethnic considerations. No where in the amended complaint do plaintiffs allege that the initiative mechanism, either on its face or in its application by defendants, discriminates against persons on the basis of race or color or other suspect classification. Therefore, plaintiffs have failed to state a claim for relief under section 1981, and that claim will be dismissed.

### 3. The Section 1983 Claim.

42 U.S.C. § 1983 provides a cause of action for any claimant whose federally protected rights have been violated by a state or local official or any other person acting under color of state law. Section 1983 does not confer any rights, it merely offers a means of redress. Therefore, it is imperative for a successful section 1983 litigant to identify the specific federally protected right that was violated.

### a. The First Amendment

Plaintiffs contend that the registration requirement for petition signers is arbitrary and capricious and violates their rights under the Petition Clause of the First Amendment: that is their right to peacefully petition the government for redress of grievances.[11] The First Amendment confers to the people religious and political freedom. It is concise and straightforward:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people to peaceably to assemble, and to petition the government for a redress of grievances.

Plaintiffs allege that persons who have applied for registration, but whose applications have not been received and processed, and those who are not registered, but who may be entitled to vote by absentee ballot, either are deprived of the right to sign an initiative petition, or they sign the petition under threat of criminal prosecution. According to plaintiffs, the registration requirement is not fair because persons who are not legally entitled to sign the petition and the petition sponsors are subject to the loss of their constitutional right to petition the government and may be subject to criminal penalties.

■ The Petition Clause protects the right of the people to make their wishes and interests known to government representatives in the legislature, judiciary, and executive branches. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 138–41, 81 S.Ct. 523, 530–31, 5 L.Ed.2d 464 (1961); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 508–12, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972). This court is not persuaded that the State initiative procedures implicate the Petition Clause of the First Amendment. As the Eleventh Circuit Court of Appeals so aptly wrote, "[I]n the initiative process people do not seek to make wishes known to government representatives but instead to enact change by bypassing their representatives altogether." *Biddulph v. Mortham,* 89 F.3d 1491, 1496 (11th Cir.1996). As in *Biddulph,* plaintiffs' First Amendment claim is more appropriately based upon the Free Speech Clause, and the court will construe it as such.

■ In response to the motion to dismiss, plaintiffs contend that by requiring the signer of an initiative petition be registered at the time he affixes his signature, the State is restricting core political speech. Therefore, plaintiffs' claim, this Court must review the registration requirement using the heightened, strict scrutiny standard. Plaintiffs are wrong. While it has long been recognized that the circulation of initiative petitions is core political speech, the case law makes clear that a state law which is content neutral

---

11. The First Amendment is made applicable to the States by the Fourteenth Amendment.

and merely regulates who may sign an initiative petition does not violate the First Amendment.

In *Meyer v. Grant,* 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) the Supreme Court held that a Colorado statute prohibiting the use of paid petition circulators violated the First Amendment right to free speech. The Court found that "[t]he circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change." *Id.* at 421, 108 S.Ct. at 1891. As the restriction against paid circulators inhibited the sponsors' attempts to achieve political change in Colorado by limiting the size of the audience and the ability to make the matter a topic of state-wide discussion, the statute imposed a limitation upon "core political speech" that was subject to "exacting scrutiny." *Id.* at 420, 108 S.Ct. at 1891–92.

 The decision in *Meyer* hinged upon the finding that the Colorado statute substantially restricted protected political discussion. Therefore, a state law regulating the initiative process must somehow substantially restrict core political speech before it will be subject to strict First Amendment scrutiny. Fairly recently, the Eighth Circuit Court of Appeals ruled that a signature requirement contained within the Nebraska Constitution does not infringe upon protected speech. *Dobrovolny v. Moore,* 126 F.3d 1111 (8th Cir.1997). In Nebraska, a successful initiative petition must contain the signatures of registered voters equal to ten percent (10%) of the number of registered voters in Nebraska at the time the petition is filed. The Court found that "the constitutional provision at issue here does not in any way impact the communication of appellants' political message or otherwise restrict the circulation of their initiative petitions or their ability to communicate with voters about their proposals. Nor does the provisions regulate the content of appellants' political speech." *Id.* at 1112. Other courts considering the

validity of similar initiative laws in other states have reached the same conclusion. *See Biddulph v. Mortham,* 89 F.3d 1491, 1496 (11th Cir.1996)(Florida laws delaying judicial review of sufficiency of initiative proposal until after circulation do not impinge upon core political speech and are not subject to strict scrutiny); *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 296–97 (6th Cir.1993)(non-discriminatory, content neutral limitations that do not restrict means of advocating initiative proposal do not violate First Amendment rights).

This Court similarly finds that the Arkansas laws requiring that petition signers be fully registered voters at the time they affix their signatures to an initiative petition do not involve a restriction on core political speech. Therefore, plaintiffs cannot state a claim for a violation of their First Amendment rights, and that claim will be dismissed.

### b. The Due Process Clause

 Plaintiffs also challenge the procedure by which the initiative measure is given a ballot title. Plaintiffs claim that it is unfair to disenfranchise the voters of the State by removing from the ballot a proposed amendment on the basis that the ballot title is defective, when the title was drafted by the Attorney General. They allege that this procedure violates their right to due process guaranteed by the Fifth and Fourteenth Amendments.

 Rights under the Due Process Clause are implicated only when a plaintiff can show a legitimate, Constitutionally-protected claim of entitlement. *Dobrovolny,* 126 F.3d at 1112 (citations omitted). The right to a state initiative process is not a right guaranteed by the United States Constitution, but is conferred and defined by state law. *Id.* A state creates a liberty interest when the statute itself places substantive limitations on official discretion. *Montero v. Meyer,* 13 F.3d 1444, 1448 (10th Cir.1994). The procedural guaran-

tees of the Due Process Clause may be invoked when a legitimate claim to a state-created entitlement has been terminated by state action. *Id.*

The initiative process created by the State of Arkansas has not reserved to initiative sponsors the right to have their proposed popular name and ballot title certified for placement on the initiative petition. Instead, the applicable law provides that the sponsors shall submit a proposed ballot title and popular name to the Attorney General for review. "The Attorney General shall, within ten (10) days, approve and certify or shall substitute and certify a more suitable and correct ballot title and popular name for [the] amendment or act. The ballot title so submitted or supplied by the Attorney General shall briefly and concisely state the purpose of the proposed measure." Ark.Code Ann. § 7–9–107(b)(Repl.1993). Clearly, the Attorney General has discretion to substitute and certify a popular name and ballot title that in his best judgment meets the stated requirements.[12] As plaintiffs are unable to claim a Constitutionally-protected right to place their own proposed popular name and ballot title before the electorate or that they were denied all of the procedure due them under state law, the claim that the Arkansas initiative process violates the Due Process Clause must be dismissed.

**4. The Section 1985 Claim.**

■ 42 U.S.C. § 1985 provides a remedy for a conspiracy to violate a person's right to equal protection of the laws. A successful claim must allege: (1) that defendants did conspire; (2) for the purpose of depriving a person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) that at least one of the co-conspirators acted or caused an act in furtherance of the conspiracy;(4) that plaintiff's person or property was injured or that plaintiff was deprived of any right or privi-

lege of a citizen of the United States; and (5) that the conspiracy was fueled by some "class based, invidiously discriminatory animus." *Andrews v. Fowler,* 98 F.3d 1069, 1079 (8th Cir.1996) (citations omitted).

■ "[An] equal protection analysis turns on the classification drawn by the statute in question. Unless a law places a burden on a fundamental right or focuses on a suspect class, it is subject to a rational basis standard of scrutiny. (citation omitted.) Suspect classifications include those such as race, alienage, gender or national origin." *Knapp v. Hanson,* 183 F.3d 786 (8th Cir.1999)(citing *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). The initiative laws do not differentiate between citizens based upon a classification system that is suspect. Nor is there a fundamental, Constitutional right to sign an initiative petition or place an initiative measure before the electorate. Therefore, the laws in question " 'must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' Thus, as long as a plausible reason exists for the classification, the Court's scrutiny must end." *Id.* (quoting *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

■ The Court finds that there is a rational basis for allowing only registered voters to sign an initiative petition. The initiative process is a powerful tool, and the State has a legitimate interest in maintaining the integrity of the process. In order to assure that only measures supported by a significant percentage of citizens are placed before the electorate, the Secretary of State must have a means to verify that each signature contained within the petition is genuine and was affixed thereto by a resident of the State. The Secretary of State verifies the sufficiency

---

**12.** The Attorney General is required to perform his duties in good faith or face criminal penalties. Ark.Code Ann. § 7–9–102 (Supp. 1997).

of each signature contained within the petition by comparing the it with the signature on file in the rolls of registered voters. As the classification is not suspect and reasonably related to a legitimate State interest, the registered voter requirement must be upheld against an equal protection challenge.

Returning to the broader issue of plaintiffs' section 1985 claim, the claim fails for several reasons. Plaintiffs have not alleged the existence of a conspiracy between the defendants to violate plaintiffs' rights. But even if plaintiffs were allowed to amend the complaint to include such an allegation, the claim would still fail because plaintiffs cannot allege a violation of the Equal Protection Clause, or that they were deprived of any right or privilege of a citizen of the United States. Finally, plaintiffs have failed to allege that the alleged conspiracy was fueled by a discriminatory animus held by the defendants. Therefore, the court will dismiss plaintiffs' claims based upon 42 U.S.C. § 1985.

### D. The Motion for Leave to Amend a Second Time

Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely given, the court may deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This Court finds that it would be futile to amend the complaint a second time because the plaintiffs are unable to allege facts stating a claim against any of these defendants for the violation of a Constitutionally-protected right. Therefore, the motion to amend will be denied.

### IV. Conclusion.

Based upon the foregoing, the motion to dismiss should be and hereby is GRANTED, and plaintiffs' motion for leave to amend is DENIED. Accordingly, each of plaintiffs' claims against all defendants named in the action are dismissed with prejudice. The Court will consider awarding costs and attorneys' fees upon appropriate motion.

IT IS SO ORDERED.